UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. BESSIE (CHIA) SOO and DR. KANG (ERIC) TING,<br><br>Plaintiffs,<br><br>v.<br><br>BONE BIOLOGICS CORPORATIONS, a Delaware Corporation, BRUCE STROEVER, an individual, JOHN BOOTH, an individual, STEPHEN LANEVE, an individual, and MTF BIOLOGICS (f/k/a THE MUSCULOSKELETAL TRANSPLANT FOUNDATION, INC.), a District of Columbia non-profit corporation,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-11520 |

**DEFENDANT, MTF BIOLOGICS'**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, MTF Biologics ("MTFB"), respectfully requests that this Honorable Court dismiss this action against MTFB. As grounds therefore, Plaintiffs have failed to state a claim against MTFB upon which relief may be granted, as required by Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

[1] This Action is Dr. Bessie (Chia) Soo's third attempt to bring claims against MTFB concerning the underlying facts, along with various other plaintiffs. She first tried to bring claims in a shareholder derivative suit. See 1:18-cv-11612-JCB, Document No. 1. After the Defendants in that action, including MTFB, filed motions to dismiss, she, along with others, amended their Complaint from a shareholder derivative suit to a class action suit, alleging that MTFB violated the Securities Exchange Act of 1934, that MTFB breached a fiduciary duty, and that MTFB aided and abetted breaches of fiduciary duties. See 1:18-cv-11612-ADB, Document No. 36.

**LEGAL STANDARD**

I.      **Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to show that the pleader is *entitled* to relief. Where that standard is not met, Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of the action. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Failure to meet this standard requires dismissal of the action."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires *more than labels and conclusions* . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasis added). A complaint is not sufficient "if it tenders 'naked assertions' devoid of 'further factual enhancement.' Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557). The "[f]actual allegations must be enough to raise a right to relief above the *speculative level* . . . ." Twombly, 550 U.S. at 555 (citing C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed.2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a *suspicion* of a legally cognizable right of action")) (emphasis added). "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of *mere conjecture*,' the complaint is vulnerable to a motion to dismiss." In re Curran, 855 F.3d 19, 25 (1st Cir. 2017) (quoting SEC

---

The defendants in that action, including MTFB, filed motions to dismiss the claims in the Amended Complaint. The United States District Court for the District of Massachusetts (Burroughs, D.J.) dismissed that action on July 29, 2019. See 1:18-cv-11612-ADB, Document Nos. 51 and 52. Only two days later, on August 1, 2019, counsel for Plaintiffs sent an email to counsel for Defendants with a copy of the Summons and Complaint in this Action and sought acceptance of service.

v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*)) (emphasis added).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

## ARGUMENT

### I. MTFB Is A Shareholder of BBC And Therefore, Not Responsible For the Management of BBC

As an initial matter, it is important to identify that the only factual allegations set forth in the Complaint that are specific to MTFB are allegations for which MTFB cannot be legally responsible.  Indeed, Plaintiffs claim that MTFB was a "controlling shareholder"[2] who's "tenure was riddled with serious mismanagement of the Company by itself and its designees, a corporate and business environment rife with poor (even non-existent) corporate governance, lack of transparency, and significant internal strife," see Complaint, ¶ 27, and that "MTFB consistently refused to share with the Founders of the Company material information about the scientific progress of Nell-1," see Complaint, ¶ 28.[3]  But, fatal to Plaintiffs' case is that MTFB is a *shareholder* of BBC and therefore, not responsible for the management of the company.  To be sure, BBC is a Delaware corporation, see Complaint, ¶ 7, and "[o]ne of the fundamental tenets of Delaware corporate law provides for a separation of control and ownership[;] [t]he board of directors has *the legal responsibility to manage the business* of a corporation for the benefit of its shareholder owners."  Malone v. Brincat, 722 A.2d 5, 9 (Del. 1998) (citing 8 Del C. § 141(a)) (emphasis added); see also, Spiegel v. Buntrock, 571 A.2d 767, 772–73 (Del. 1990) ("A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than

---

[2] Plaintiffs allege that (1) MTFB was a 35% shareholder of BBC, see Complaint ¶ 11, and (2) three BBC board members were "designees" of MTFB, see Complaint, ¶¶ 8-10.

[3] Plaintiffs allege that Nell-1 is BBC flagship product that is licensed to BBC by UC Regents. See Complaint, ¶¶ 14-15.

shareholders, manage the business and affairs of the corporation") (citing Paramount v. Time, 571 A.2d 735, 738, 751 (Del. 1990); Mills Acquisition Co. v. Macmillan, Inc., 559 A.2d 1261, 1280 (Del. 1989); Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 729 (Del. 1988); Pogostin v. Rice, 480 A.2d 619, 624 (Del. 1984); Aronson v. Lewis, 473 A.2d 805, 811–12 (Del. 1984)).  Thus, MTFB cannot be the legal target of Plaintiffs' concerns over management issues where it is a shareholder.

Similarly, as to information about Nell-1, it is BBC's management and board that would control that information, not a shareholder of the company.  Moreover, MTFB was not the owner of Nell-1 (UC Regents was the owner) nor the licensee of Nell-1 (BBC was the licensee).  Therefore, MTFB did not have any contractual relationship with Plaintiffs concerning Nell-1.  Thus, Plaintiffs' target is entirely misplaced on MTFB and the Action should be dismissed as to MTFB.

## II. Plaintiffs Merely Recite the Elements of a Claim for Tortious Interference As to MTFB

Count II of the Complaint, which is the only count asserted against MTFB in this Action, is a claim for tortious interference with contract.  Here, Plaintiffs do not set forth *any* factual allegations that are specific to MTFB to support such a claim; instead, Plaintiffs merely recite the necessary legal elements of a claim, which is insufficient to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

To be sure, under Massachusetts law,[4] there are four elements to establish a claim for tortious interference with a contract; namely:

---

[4] Although Plaintiffs have failed to set forth *any* factual allegations concerning the specific actions that MTFB took to constitute tortious interference, they claim that the wrongful conduct occurred in Massachusetts.  See Complaint, ¶ 3.  Without conceding that Massachusetts law

>    (1) that the plaintiff had a contract with a third party;
>
>    (2) that the defendant knowingly induced the third party to break that contract;
>
>    (3) that the defendant's interference, in addition to being intentional, was improper in motive or means; and
>
>    (4) that the plaintiff was harmed by the defendant's actions.

Weiler v. PortfolioScope, Inc., 469 Mass. 75, 84 (2014) (quoting Psy–Ed Corp. v. Klein, 459 Mass. 697, 715-16 (2011)).

Here, Plaintiffs merely recite those elements, nearly verbatim, in their Complaint:

>    76. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.
>
>    77. BBC was bound by several agreements with each of the Founders, as described herein.
>
>    78. The Defendants identified above *knowingly interfered* with these contracts by inhibiting and ultimately preventing BBC's performance thereof, by causing and/or substantially assisting in BBC's termination of those contracts, in breach of the terms of those contracts, as set forth herein.
>
>    79. This *interference, in addition to being intentional, was improper in motive or means*, as set forth herein.
>
>    80. The Plaintiffs were substantially *harmed* by these Defendants' actions.

Complaint, ¶¶ 76-80 (emphasis added).

Although Plaintiffs' cause of action references allegations set forth elsewhere in the Complaint, there are no factual allegations as to: (1) what specific actions *MTFB took* to

---

ultimately applies to the claim, MTFB assumes its application in this Motion for the purpose of comparing the allegations to the legal elements of a claim for tortious interference. Regardless, no matter which state's substantive law applies, Plaintiffs have failed to set forth any factual allegations to support a claim against MTFB.

intentionally interfer with the subject contracts; (2) how *MTFB acted* with improper motive; or (3) how *MTFB acted* with improper means.  Thus, merely alleging that MTFB "knowingly interfered with these contracts *by inhibiting and ultimately preventing BBC's performance thereof, by causing and/or substantially assisting in BBC's termination* of those contracts" and that this interference was "improper" in motive or means, see Complaint, ¶¶ 78-79, is nothing more than pure naked assertions devoid of further factual enhancement making the Complaint appropriate for dismissal.  See Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

Instead of asserting factual allegations against MTFB, it is abundantly clear that Plaintiffs' allegations concern BBC's Board and management.[5]  To be sure, Plaintiffs allege that they put their concerns in an October 26, 2016 email *to the Board of Directors of BBC*, see Complaint, ¶ 35, *not* to MTFB.[6]  Plaintiffs explicitly state in their Complaint that the October 26th email "simply requested *BBC and its Board and management* to live up to their duties *as directors and officers*, as well as their contractual obligations to the Founders.  Nevertheless, Dr. Wu's email sparked indignation and vehement resistance *from BBC's non-Founder directors and management*, including LaNeve." See Complaint, ¶ 36; see also Complaint, ¶ 38 ("*BBC's and LaNeve's reaction* to the Founder's legitimate observations and concerns was not to engage and communicate, or attempt any kind of constructive resolution or improvement, but instead to escalate, retaliate against, and finally terminate the Founders, and in doing so violate the terms of BBC's agreements with the Founders" (emphasis added)); Complaint, ¶ 39 ("the MTFB-

---

[5] Ironically, Plaintiffs' allegations circle back to them as they were members of BBC's Board or scientific advisory board during the relevant time period.  See Complaint, ¶ 29.  Thus, their complaints lie at their own feet, not at the feet of a shareholder.

[6] Plaintiffs cite to additional emails to either BBC's Board or its management in support of their claims.  See Complaint, ¶¶ 37, 41, 44.  Conversely, Plaintiffs do not cite to any communications with MTFB.

designee defendants *on BBC's Board and management* began pressing the Founders with false and baseless accusations about the Founders' alleged violations of the FPSAs and their duties" (emphasis added) (referencing certain actions of LaNeve));  Complaint, ¶ 42 ("In sum, the Founders vigorously disputed BBC's and other Defendants' false accusations and called them out for what they truly were – baseless attempts to retaliate against them and distract from the real issues, such as the gross mismanagement of the Company by MTFB-designee Defendant LaNeve and others").  Notably absent in all of these allegations is *any reference* to actions of MTFB.  Thus, there are no factual allegations in the Complaint concerning false accusations or retaliation *by MTFB* to support Plaintiffs' claim for tortious interference against MTFB.

In sum, Plaintiffs have set forth *no factual allegations against MTFB* concerning tortious interference with contract beyond ***threadbare recitals of the elements*** of a cause of action, which are entirely insufficient to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).  The allegations are thus too meager, vague, and conclusory to remove the possibility of relief from the realm of mere conjecture and therefore, the Action must be dismissed as to MTFB.  See In re Curran, 855 F.3d at 25.

## CONCLUSION

Based on the foregoing, Plaintiffs have not shown that they are entitled to relief in compliance with Rule 8 of the Federal Rules of Civil Procedure.  The allegations against MTFB are not supported in law and fact.  As to the alleged facts, they are nothing more than naked assertions devoid of further factual enhancement that fail to rise above the speculative level and must be dismissed.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

WHEREFORE, for the reasons stated herein, Defendant, MTF Biologics, respectfully requests that this Honorable Court dismiss this action against it.

MTF BIOLOGICS

By Its Attorneys,

*/s/ Douglas T. Radigan*
Douglas T. Radigan (BBO #657938)
Jared A. Fiore (BBO #684997)
BOWDITCH & DEWEY, LLP
311 Main Street
P.O. Box 15156
Worcester, MA  01615-0156
Telephone:  508-926-3416
Facsimile:  508-929-3116
E-mail:  dradigan@bowditch.com
E-mail:  jfiore@bowditch.com

9

## CERTIFICATE OF SERVICE

I certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 14, 2019.

                                          */s/* Douglas T. Radigan
                                          Douglas T. Radigan