UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DR. BESSIE (CHIA) SOO and DR. KANG (ERIC) TING, | * * * | |
| Plaintiffs and Defendants-in-Counterclaim, | * * * | |
| v. | * * | Civil Action No. 19-cv-11520-ADB |
| BONE BIOLOGICS CORPORATION and STEPHEN LANEVE, | * * * | |
| Defendants and Plaintiff-in-Counterclaim. | * * * | |

**MEMORANDUM AND ORDER ON MOTIONS
TO DISMISS AND STRIKE COUNTERCLAIMS**

BURROUGHS, D.J.

Plaintiffs Dr. Bessie (Chia) Soo ("Dr. Soo") and Dr. Kang (Eric) Ting ("Dr. Ting") (together, "Plaintiffs") brought this action against Defendants Bone Biologics Corporation ("BBC" or the "Company") and Stephen LaNeve ("LaNeve," together with BBC ("Defendants"), alleging that the Company breached its contracts with them and that LaNeve tortiously interfered with those contracts. [ECF No. 22 ¶¶ 48–57 ("Am. Compl.")]. BBC then brought counterclaims against Plaintiffs for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment, and additionally seek declaratory judgment against both Plaintiffs. [ECF No. 37 ("Counterclaim Compl.")]. Currently pending before the Court is Plaintiffs' motion to dismiss the counterclaim complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), [ECF No. 48], and their motion strike pursuant to Federal Rule of Civil Procedure 12(f), [ECF No. 52].

1

For the reasons set forth below, Plaintiffs' motion to dismiss, [ECF No. 48], is GRANTED in part and DENIED in part and Plaintiffs' motion to strike, [ECF No. 52], is DENIED.

## I.      BACKGROUND

### A.      Factual Background

The following facts are drawn from the counterclaim complaint, the well-pleaded allegations of which are taken as true for purposes of evaluating Plaintiffs' motion to dismiss. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014).  The Court also draws facts from documents attached to and incorporated by reference into the complaint.  A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

Plaintiffs and Dr. Ben Wu ("Dr. Wu," together with Plaintiffs, the "Founders") first helped found Bone Biologics, Inc. ("BBI") in 2004 with the purpose of developing science concerning bone growth compounds.  [Counterclaim Compl. ¶ 14].  The Founders managed BBI until about 2006 when MTF Biologics, a non-profit corporation, became involved and installed new executives to lead the corporation.  [Id. ¶ 16].  On or about October 18, 2006, BBC, a Delaware corporation, was formed.  [Id. ¶ 17].

Beginning in early 2015, the Founders requested additional compensation from BBC. [Counterclaim Compl. ¶ 18].  BBC alleges that the Founders, namely Dr. Soo, threatened to cease working for the Company and to withhold past research unless they received additional compensation.  BBC and the Founders negotiated two new agreements in the summer of 2015, first awarding the Founders $2,250,000 worth of BBC stock and then another 1,153,846 shares. [Id. ¶¶ 19–23].  Also around this time, a new management team for BBC was brought in led by Chief Executive Officer, LaNeve.  [Id. ¶ 22].  BBC additionally claims that the Founders

expressed that they wanted to sell their new BBC shares to raise capital, which the Company was afraid would worry investors and lenders.  [Id. ¶ 20].

According to BBC's counterclaim complaint, continued pressure from the Founders for additional compensation caused the Company to enter "reluctantly" into another set of agreements, which became known as the Founders' Professional Services Agreements (the "FPSAs").  [Counterclaim Compl. ¶ 28; see also ECF No. 22-1].  Under the FPSAs, Plaintiffs' primary focus was supposed to be the development of new intellectual property that would be owned by BBC, specifically the development of new patentable discovery related to NELL-1, a bone and cartilage reformation product.  [Id. ¶ 28–29].  BBC alleges that Plaintiffs knew that "time was of the essence" for the Company because it was a pre-clinical, public company and eight of the thirteen patents it licensed were set to expire in 2019.  [Id. ¶¶ 29–30].  Discussing the formation of these agreements in a November 29, 2015 email, LaNeve wrote to the Plaintiffs that "the founders are able to do whatever it takes over the next two years to perform the foundational work necessary" to allow the goals of the FPSAs to be met.  [Id. ¶ 30].  In another email that same month, Dr. Wu urged that the Founders' high compensation was warranted because "this is NOT your usual slow walk agreements to get founders more work.  We are asked to do a lot . . . . Besides being not typical, BBC needs this urgently.  We all know this[.]"  [Id. ¶ 32].  According to BBC, part of the reason for its "generous[]" compensation for the Founders was that Plaintiffs represented to the Company that they would each work one day a week on the services promised under the FPSAs.  [Id. ¶ 34].

Eventually, in January 2016, identical FPSAs were executed between each of the Founders and BBC.  [Counterclaim Compl. ¶ 35].  Attached to the FPSAs as Exhibit 3 was a Description of Services listing eleven items that Plaintiffs would work on under the terms of the

agreements.  [ECF No. 22-1 at 31–32 (FPSAs' Exhibit 3, Description of Services)].  Among

other services, each Founder was to

> render services supporting and advising the Company with respect to . . . Long term
> IP strategy, including providing input on IP / Patent approach – Patent Term
> Extension (PTE), Patent Term Adjustment (PTA), New Filings; guiding the
> Company's R&D focus, drive R&D direction, and build R&D programs (subject to
> mutually acceptable sponsored research agreements and receipt by Advisor from
> Company the necessary resources and authority to pursue IP and R&D programs
> recommended by the Advisor) to produce patent applications that if awarded will
> extend patent life of NELL-1 by at least 12 years; improve NELL-1 performance
> that if produced/purified/delivered properly by GMP protein contractor can
> increased Nell-1 half life by 25% over current Nell-1 patents set to expire in 2019,
> and work closely with Company patent counsel to build a robust IP "wall" around
> the Company's product portfolio.

[Id.; Counterclaim Compl. ¶ 37].  Item Two under the Description of Services stated

> Pursuant to one or more sponsored research agreements to be entered into with the
> Company on or before Jan 15, 2016, Advisor will support sponsored research
> services to be conducted on behalf of Company, concerning, among other things,
> basic NELL-1 characterization . . . , NELL-1 pipeline product work . . . , disease
> indication related work[.]

[ECF No. 22-1 at 31 (FPSAs' Exhibit 3, Description of Services)].

 BBC alleges that all other services listed under the agreements, apart from Item Two,

could have been completed, in part or in whole, without the execution of such a sponsored

research agreement ("SRA") and, that under the terms of the agreements, an SRA was not

required at all unless one of the Founders identified an area to be studied through the UCLA labs.

[Counterclaim Compl. ¶¶ 38–40].  The counterclaim complaint does not allege that any SRAs

were entered under the FPSAs.  Additionally, the FPSAs expressly required the Plaintiffs to

perform the services in a "diligent and workmanlike manner."  [Id. ¶ 36; ECF No. 22-1 at 6].

Following the execution of the FPSAs, BBC claims that it took steps to ensure that

Plaintiffs would begin their work promptly, which included meeting with the Founders shortly

after the contract executions to discuss specific plans to develop new intellectual property,

deliverables, and the upcoming expiration of existing patents.  [Counterclaim Compl. ¶¶ 42–44].
Plaintiffs were also made aware of specific "action items" that included filing a provisional
patent by March 16, 2016 and converting a provisional patent to a utility patent by mid-March
2016.  [Id. ¶ 45].  The Founders did not raise any concerns with the Company about their
intention or ability to complete these items in a timely manner, [id.], and BBC asserts that it kept
the Founders updated on all material information needed to perform the services required of
them under the FPSAs, [id. ¶ 48].

The Company alleges, however, that Plaintiffs failed to do any work on any of the eleven
categories of services under the FPSAs for close to a year, which eventually resulted in BBC
terminating the FPSAs.  [Counterclaim Compl. ¶¶ 40, 58, 79–89].

BBC asserts that in that year Plaintiffs never once said that a lack of a SRA was
preventing them from starting their work on these services, [Counterclaim Compl. ¶¶ 50–51],
and that even when the Company asked Plaintiffs to complete specific tasks within the bounds of
the work required under the FPSAs, or tried to discuss the status of their work with them, it was
"met with unresponsiveness, combativeness, or unwarranted delay," [id. ¶¶ 54–57].  BBC claims
that, instead of performing the work required under the FPSAs, Plaintiffs inappropriately tried to
insert themselves into management, development, and pre-manufacturing work for which they
were unqualified.  [Id. ¶¶ 59–62].  Furthermore, BBC alleges that Plaintiffs had "no interest" in
performing the work, but were "focused on taking the benefits of FPSAs, while continuing to
seek greater personal roles at BCC and information that would have helped in their competitive
venture."  [Id. ¶ 63].

Plaintiffs were compensated in stock for the first year of the FPSAs for "work [Plaintiffs]
were expected to do and results they were expected to produce on a going forward basis."

[Counterclaim Compl. ¶¶ 74, 77].  According to the counterclaim complaint, when BBC terminated the FPSAs on December 13, 2016, Plaintiffs were not entitled to any further cash or other compensation given their failure to perform.  [Id].

### B.    Procedural Background

Plaintiffs initiated this case on July 11, 2019, bringing claims against the Company, LaNeve, and three other defendants (two individuals and the Company's largest shareholder). [ECF No. 1].  On August 12, 2020, the Court granted the original defendants' motions to dismiss, [ECF Nos. 9, 11, 13], but permitted Plaintiffs to file an amended complaint within twenty-one days.  [ECF No. 21].  Plaintiffs filed their amended complaint on September 2, 2020 against only Defendants BBC and LaNeve.  [Am. Compl.].  Defendants moved to dismiss the amended complaint on September 16, 2020, [ECF No. 23], which the Court denied, [ECF No. 33].  On May 25, 2021, Defendants answered the amended complaint and BBC filed counterclaims against Plaintiffs.  [ECF No. 37].  Plaintiffs moved to dismiss the counterclaim complaint on July 30, 2021, [ECF No. 48], which BBC opposed, [ECF No. 51].  Plaintiffs also moved to strike the counterclaim complaint on September 8, 2021.  [ECF Nos. 52, 56 (opposition)].

## II.    LEGAL STANDARD

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim.  See U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  While detailed factual allegations are not required, a counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted).  The facts alleged must be sufficient to "state a claim to relief that is plausible on its face."  A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Twombly, 550 U.S. at 570).

When assessing the sufficiency of a counterclaim complaint, the Court first "separate[s] the [pleading's] factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Next, the Court "determine[s] whether the remaining factual content allows a 'reasonable inference that the [defendant-in-counterclaim] is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.    DISCUSSION

### A.    Timeliness

Plaintiffs assert that BBC's contract-related counterclaims are untimely under Delaware's three-year statute of limitations.  [ECF No. 50 at 14–15].  The Court finds, however, that the counterclaims are compulsory counterclaims and therefore not barred by the statute of limitations.

The Federal Rules of Civil Procedure define a compulsory counterclaim as one which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  Fed. R. Civ. P. 13(a).  "The majority view in federal court is that 'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.'"  Kickflip, Inc. v. Facebook, Inc., No. 12-cv-01369, 2015 WL 1517237, at *5 (D.

Del. Mar. 31, 2015) (quoting <u>Giordano v. Claudio</u>, 714 F.Supp. 2d 508, 523 (E.D. Pa. 2010)).[1]

"[W]hen one party to a contract puts provisions of it at issue, . . . all actions taken pursuant to

that contractual relationship become part of the relevant transaction or occurrence." <u>Matrix Grp.,</u>

<u>Inc. v. Ford Motor Credit Co.</u>, No. 04-cv-01552, 2004 WL 2742835, at *3 (E.D. Pa. Nov. 29,

2004).

 In <u>MirTech Inc. v. AgroFresh Inc.</u>, plaintiffs filed a complaint challenging the scope and

enforceability of a contract and defendant filed counterclaims alleging breach of the contract and

seeking declaratory judgment.  No. 20-cv-01170, 2021 WL 4284614, at *8 (D. Del. Sept. 21,

2021).  Because the counterclaims were based on rights set forth in that same contract and sought

to enforce its terms, the court found that the counterclaims were compulsory and timely filed

because they "relate[d] back" to the complaint, and thus denied plaintiffs' motion to dismiss

based on the statute of limitations.  <u>Id.; see also</u> <u>Blattman v. Siebel</u>, No. 15-cv-00530, 2017 WL

1217209, at *4 (D. Del. Mar. 31, 2017).

 Because BBC's counterclaims similarly "relate back" to the amended complaint by

seeking to enforce the terms of the same contracts at issue, they are compulsory and thus, any

statute of limitations was tolled upon the timely filing of Plaintiffs' complaint, rendering the

counterclaims also timely filed.  There is no support for Plaintiffs' contention that BBC's

counterclaims must "relate back" to the specific claims of breach that BBC made when it

terminated Plaintiffs' contracts.  Because the Court has already found that BBC's counterclaims

---

[1] This Court has already found that Delaware law applies to all claims in this matter.  <u>See</u> <u>Soo v.</u>
<u>Bone Biologics Corp.</u>, 19-cv-11520, 2020 WL 4673521, at *3 (D. Mass. Aug. 12, 2020); <u>see also</u>
<u>Soo v. Bone Biologics Corp.</u>, No. 19-cv-11520, 2021 WL 1391458, at *3 (D. Mass. Apr. 13,
2021) ("The parties seem to agree that Delaware law governs Plaintiffs' claims . . . and the Court
will therefore apply it.").

are compulsory and, therefore timely, it need not address the statute of limitations issues or the issues of recoupment and laches raised by BBC.  See [ECF No. 51 at 10–12; ECF Nos. 59, 62].

**B.      Counts III and VI: Breach of Contract**

Counts Three and Six allege that Plaintiffs each breached their respective FPSAs by failing to perform the promised work in a diligent and workmanlike manner.  [ECF No. 37 at ¶¶ 103–06; 117–20].

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff."  H-M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003).

To support the claim that Plaintiffs breached their obligations under the FPSAs, BBC must plead facts sufficient to establish that Plaintiffs actions rose to "more than [a] mere default," but rather constituted a material breach of the contract.  DeMarie v. Neff, No. 2077-S, 2005 WL 89403, at *4 (Del. Ch. Jan. 12, 2005) (quoting 14 Richard A. Lord, Williston On Contracts § 43:15 (4th ed. 2004)).  "A material breach is a failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract or makes it impossible for the other party to perform under the contract."  eCommerce Indus., Inc. v. MWA Intel., Inc., No. 7471, 2013 WL 5621678, at *13 (Del. Ch. Sept. 30, 2013) (internal quotation marks omitted).  In essence, a breach is material if the breaching party fails to perform a substantial part of the contract.  Shore Inves., Inc. v. Bhole, Inc., C.A. No. S09C–09–013, 2011 WL 5967253, at *5 (Del. Super. Ct. Nov. 28, 2011) (citing 23 Richard A. Lord, Williston On Contracts § 63:3 (4th ed. 2004)).

Here, BBC has sufficiently pled that Plaintiffs failed to perform, in a "diligent and workmanlike manner," a substantial (or any) part of the contract.  According to the counterclaim

complaint, Plaintiffs breached the FPSAs by failing to do any of the work listed in the eleven categories enumerated by the FPSAs' Description of Services.  Although BBC reasonably relied on Plaintiffs' representations and commitment to do the work diligently and compensated them accordingly, Plaintiffs, in breach of their contracts, failed to deliver any meaningful services in return.

Plaintiffs argue that BBC's claims cannot be viable because they "diametrically" oppose this Court's earlier finding that Plaintiffs' amended complaint had plausibly suggested that they did not materially breach their FPSAs.  [ECF No. 50 at 5].  Plaintiffs' argument has no support in law.  The Court agrees with BBC that counterclaims that allege different views are proper at the pleading stage, as the Court is free to reconsider any interlocutory orders.  See Perez-Ruiz v. Crespo-Guillen, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case."  See also Commerce Oil Refining Corp. v. Miner, 303 F.2d 125, 128 (1st Cir. 1962) ("[A] ruling denying a motion to dismiss is not the law of the case, and is not final even in the district court").

Plaintiffs' additional arguments that various parts of BBC's pleading are disputed, irrelevant, unsupported, vague, or contradictory are all equally unavailing and inappropriate at the pleading stage.  "[A] motion to dismiss is not an occasion to prove or disprove the facts in the Complaint."  Greenier v. PACE, Local No. 1188, 201 F.Supp.2d 172, 176 (D. Me. 2001). Instead, the Court must accept the pleading's factual allegations as true and draw all reasonable inferences in favor of claimants.  See Morales-Cruz, 676 F.3d at 224.  Having done so, the Court finds that BBC's breach of contract counterclaims are sufficiently pled.  Therefore, Plaintiffs' motion to dismiss Counts III and VI is DENIED.

C.      Counts IV and VII: Breach of Covenant of Good Faith and Fair Dealing

Counts Four and Seven allege that Plaintiffs breached the covenant of good faith and fair dealing in their respective FPSAs by failing to perform promised work and to cooperate with BBC in connection with that work, and by attempting to use BBC assets and knowledge for the benefit of a new company.  [ECF No. 37 at ¶¶ 107–11; 121–25].

"The implied covenant is inherent in all contracts and is used to infer contract terms 'to handle developments or contractual gaps that the asserting party pleads neither party anticipated.'"  In re CVR Ref., LP Unitholder Litig., No. 2019-cv-00062, 2020 WL 506680, at *13 (Del. Ch. Jan. 31, 2020) (quoting Dieckman v. Regency GP LP, 155 A.3d 358, 367 (Del. 2017)).  "It applies 'when the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected.'"  [Id.]  "The reasonable expectations of the contracting parties are assessed at the time of contracting."  [Id.]

Delaware case law is explicit that the implied covenant of good faith is a limited doctrine with limited application, Nemec v. Shrader, 991 A.2d 1120, 1128 (Del. 2010), and applies only when the contract is "truly silent" on the conduct at issue in the claim, In re CVR Refining, 2020 WL 506680, at *13 (citation omitted).  Delaware courts do, however, recognize that there are "some aspects of [a] deal . . . so obvious to the participants that they never think, or see no need, to address them."  Dieckman, 155 A.3d at 368 (citation omitted) (finding that it was implied in the express terms of a contract that members designated to an "unaffiliated" committee, in the context of a conflict of interest between merging partnerships, should be genuinely unaffiliated with partners and that deceptive practices giving the appearance of independence were impermissible).  Even in cases where courts find it "reasonably conceivable" that a defendant has

11

breached the implied terms of a contract, there must be sufficient facts as to the specific conduct that led to the breach.  In re CVR Refining, 2020 WL 506680, at *15–16.

The Court concludes that the counterclaim complaint has sufficiently pled facts to suggest that Plaintiffs acted arbitrarily and unreasonably for the purpose of preventing BBC from receiving the benefits bargained for in the FPSAs.  BBC alleges that Plaintiffs were aware of the need to perform urgently, particularly in light of the expiring patents, and knew that they were uniquely positioned to perform that work, and, despite this, did not perform the contractually-required services at all, actively avoided cooperation with requests from BBC, and never alerted BBC that they were not performing or that they were awaiting SFAs in order to perform.  BBC further alleges that Plaintiffs never intended to perform and signed the FPSAs only to benefit themselves and a competitive venture.  These types of implied promises, which are too "obvious" and "provocative" to need to be explicitly included in the FPSAs, Dieckman, 155 A.3d at 368, invoke the covenant of good faith and fair dealing.  Accordingly, Plaintiffs' motion to dismiss Counts IV and VII is DENIED.

### D.    Counts V and VIII: Unjust Enrichment

Counts Five and Eight allege that Plaintiffs have been unjustly enriched by the benefit of compensation in the form of BBC equity ownership received pursuant to their respective FPSAs where neither performed any of the work they promised to do in the FPSAs.  [ECF No. 37 at ¶¶ 112–16, 126–130].  As a result, Plaintiffs unjustly retained the benefits of BBC equity ownership when neither performed the work promised in exchange.  [Id.]

Under Delaware law, "[a] claim for unjust enrichment is not available if there is a contract that governs the relationship between parties that gives rise to the unjust enrichment claim."  Kuroda v. SPJS Holdings, L.L.C., 971 A.2d 872, 891 (Del. Ch. 2009).  Pleading unjust

enrichment in the alternative, however, is allowed "when there is doubt surrounding the enforceability or the existence of the contract." Envolve Pharmacy Sols., Inc. v. Rite Aid Hdqtrs. Corp., No. 19-cv-12214, 2021 WL 140919, at *9 (Del. Super. Ct. Jan. 15, 2021), reargument denied, No. 19-cv-12214, 2021 WL 855866 (Del. Super. Ct. Mar. 8, 2021); see also Intermec IP Corp. v. TransCore, LP, No. 20-cv-03254, 2021 WL 3620435, at *17 (Del. Super. Ct. Aug. 16, 2021) (stating that Delaware law only permits unjust enrichment claims alternatively pled alongside breach of contract claims where "there is doubt surrounding [the relevant contract's] enforceability or . . . existence."). Thus, "[w]hen the complaint alleges an express, enforceable contract that controls the parties' relationship . . . a claim for unjust enrichment will be dismissed." Kuroda, 971 A.2d at 891 (Del. Ch. 2009) (quoting Bakerman v. Sidney Frank Importing Co., No. 06-cv-01844, 2006 WL 3927242, at * 18 (Del. Ch. Oct. 10, 2006) (revised Oct. 16, 2006).

Because there is no dispute as to the enforceability or the existence of the FPSAs, Plaintiffs' motion to dismiss Counts Five and Eight is GRANTED.[2]

## IV.   MOTION TO STRIKE

Plaintiffs have also moved to strike BBC's counterclaim complaint pursuant to Federal Rule of Civil Procedure 12(f), [ECF No. 52], rehashing some of the arguments in their motion to dismiss and also alleging that the entire filing is "rife with redundant, immaterial, impertinent, and scandalous allegations, to the extent that striking the entire pleading is justified," [id. at 2]. Plaintiffs' motion is entirely meritless and will be accordingly denied. The counterclaim complaint does not contain any material that remotely meets the Rule 12 standard, especially

---

[2]Although Plaintiffs' motion seeks dismissal of all counterclaims, it does not raise any specific arguments in support of the dismissal of BBC's declaratory judgment counts. As such, the motion is DENIED as to Counts I and II.

considering that the Court has already found that BBC sufficiently pled most of its counterclaims.  The Court reminds Plaintiffs that motions to strike that seem only to be a "dilatory or harassing tactic" are consistently disfavored.  <u>Dennison v. LaPointe</u>, No. 06-cv-40100, 2006 WL 3827516, at *1 (D. Mass. Dec. 29, 2006) (citation omitted).

## V.    CONCLUSION

Accordingly, Plaintiffs' motion to dismiss, [ECF No. 48], is <u>GRANTED</u> as to Counts V and VIII, and <u>DENIED</u> as to Counts I, II, III, IV, VI, and VII.  Plaintiffs' motion to strike, [ECF No. 52], is also <u>DENIED</u>.

**SO ORDERED.**

March 31, 2022                                          /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE